**Marquis Aurbach**
Nick D. Crosby, Esq.
Nevada Bar No. 8996
Jordan W. Montet, Esq.
Nevada Bar No. 14743
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
ncrosby@maclaw.com
jmontet@maclaw.com

**Santoro Whitmire**
James E. Whitmire, Esq.
Nevada Bar No. 6533
10100 W. Charleston Blvd., #250
Las Vegas, Nevada 89135
Telephone: (702) 948-8771
Facsimile: (702) 948-8773
JWhitmire@santoronevada.com

*Attorneys for Defendant, LVMPD*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL COYNE, individually and on behalf of those similarly situated; DAVID DENTON, individually and on behalf of those similarly situated; and SEAN BOLLIG, individually and on behalf of those similarly situated, | Case No.:<br><br>Eighth Judicial District Court Case No.: A-22-848354-C |
| Plaintiffs, | |
| vs. | **DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT** |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, | |
| Defendant. | |

TO: THE UNITED STATES DISTRICT COURT DISTRICT OF NEVADA.

Defendant Las Vegas Metropolitan Police Department ("LVMPD" or "Department"), by and through its attorneys of record, Nick D. Crosby, Esq., with the law firm of Marquis Aurbach, and James E. Whitmire, Esq., with the law firm of Santoro Whitmire, hereby gives notice of removal of the above-captioned action from the Eighth Judicial District Court of Clark County,

Page 1 of 4

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-392 4647753_2 3/16/2022 2:16 PM

Nevada, to the United States District Court for the District of Nevada. Removal of this action is authorized under 28 U.S.C. §§ 1331, 1441, and 1446. The specific grounds for removal are as follows:

1.      LVMPD is the Defendant in the above-entitled action commenced in the Eighth Judicial District Court in and for the County of Clark, Case No. A-22-848354-C, Department 15, and is now pending in that court.

2.      Plaintiffs filed their Complaint on February 15, 2022. Service of Plaintiffs' Complaint upon the Defendant was made on February 23, 2022. Plaintiff asserts causes of action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as well as state-law wage and hour causes of action. Electronically filed and served copy of the Complaint is attached hereto as **Exhibit A**.

3.      Thirty days have not elapsed since Defendant was served with the Complaint in this action.

4.      A true and correct copy of this Notice of Removal is being filed this date with the Clerk of the Eighth Judicial District Court of Nevada.

5.      Written notice of this Notice of Removal will be given to the adverse parties, and a copy of this Notice of Removal will be filed with the Clerk of the Eighth Judicial District Court in and for Clark County of Nevada. 28 U.S.C. § 1446(d).

6.      No defenses are waived by filing this Notice of Removal.

7.      This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

8.      Based on the foregoing, Defendant removes the above action now pending in the Eighth Judicial District Court of Nevada, in and for the County of Clark, as Case No. A-22-848354-C, to this Court.

/ / /
/ / /
/ / /
/ / /

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-392 4647753_2 3/16/2022 2:16 PM

1    9.     All served Defendants have agreed to this removal.

2    Dated this _16_ day of March, 2022.

MARQUIS AURBACH

By: _____
    Nick D. Crosby, Esq.
    Nevada Bar No. 8996
    Jordan W. Montet, Esq.
    Nevada Bar. No. 14743
    10001 Park Run Drive
    Las Vegas, Nevada  89145

**Santoro Whitmire**
James E. Whitmire, Esq.
Nevada Bar No. 6533
10100 W. Charleston Blvd., #250
Las Vegas, Nevada 89135
Telephone: (702) 948-8771
Facsimile: (702) 948-8773
JWhitmire@santoronevada.com

*Attorneys for Defendant, LVMPD*

---

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-392 4647753_2 3/16/2022 2:16 PM

1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing <u>**DEFENDANT'S NOTICE OF REMOVAL TO**</u>

<u>**FEDERAL COURT**</u> was submitted electronically for filing and/or service with the United

States District Court on the 16ᵗʰ day of March, 2022.   Electronic service of the foregoing

document shall be made in accordance with the CM/ECF-Service List as follows:

Anthony P. Sgro, Esq.
Kelly B. Stout, Esq.
Sgro & Roger
720 So. Seventh Street, Third Floor
Las Vegas, Nevada 89101
TSgo@sgroandroger.com
KStout@sgroandroger.com
Attorneys for Plaintiffs

I further certify that I served a copy of this document by mailing a true and correct copy

thereof, postage prepaid, addressed to:

Anthony P. Sgro, Esq.
Kelly B. Stout, Esq.
Sgro & Roger
720 So. Seventh Street, Third Floor
Las Vegas, Nevada 89101
TSgo@sgroandroger.com
KStout@sgroandroger.com
Attorneys for Plaintiffs

and that there is a regular communication by mail between the place of mailing and the place(s)

so addressed.

An employee of Marquis Aurbach

MARQUIS AURBACH
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

MAC:14687-392 4647753_2 3/16/2022 2:16 PM

# EXHIBIT "A"

Electronically Filed
2/15/2022 5:23 PM
Steven D. Grierson
CLERK OF THE COURT

1  COMP
2  ANTHONY P. SGRO
   Nevada Bar No. 3811
3  KELLY B. STOUT
   Nevada Bar No. 12105
4  **SGRO & ROGER**
   720 South Seventh Street, Third Floor
5  Las Vegas, Nevada 89101
   Telephone: (702) 384-9800
6  Facsimile: (702) 665-4120
7  TSgro@sgroandroger.com
   KStout@ sgroandroger.com
8
9  *Attorneys for Plaintiffs*

CASE NO: A-22-848354-C
Department 15

10            DISTRICT COURT
           CLARK COUNTY, NEVADA
11

12  Daniel Coyne, individually and on behalf of those        Case No.
    similarly situated; David Denton, individually
13  and on behalf of those similarly situated; and           Dept. No.
    Sean Bollig, individually and on behalf of those
14  similarly situated;                                       COLLECTIVE AND CLASS ACTION COMPLAINT

15              Plaintiffs,                                   EXEMPT FROM ARBITRATION:  CLASS ACTION
                                                             (NAR 3(A), 5(A))
16  v.
17
    LAS VEGAS METROPOLITAN POLICE
18  DEPARTMENT,
19
                Defendant.
20

21
        Plaintiffs Daniel Coyne, David Denton, and Sean Bollig (collectively, "Plaintiffs" and
22
    "Class Representatives"), individually and on behalf of all others similarly situated, by and through
23
    their attorneys, the law firm of Sgro & Roger bring this action against the Las Vegas Metropolitan
24
    Police Department.
25
                          I.      **CASE SUMMARY**
26
        1.     Plaintiffs are peace officers employed full time by the Las Vegas Metropolitan
27
    Police Department (the "LVMPD") and members of the Las Vegas Police Protective Association
28

                            Page 1 of **28**

("PPA"). Plaintiffs contend that LVMPD willfully violated the Fair Labor Standards Act of 1938 ("FLSA") and Nevada Law by allowing Plaintiffs, and other similarly situated individuals, to work scheduled overtime shifts without paying for all overtime hours worked. Plaintiffs seek to recover unpaid overtime compensation, liquidated damages, interest, and attorneys' fees and costs.

2.     Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated persons who were employed by LVMPD during the past three years.

3.     Plaintiffs' claims under the Nevada Constitution and Chapter 608 of the Nevada Revised Statutes are brought as a true class action, pursuant to NRCP 23, on behalf of themselves and on behalf of all other similarly situated persons who were employed by LVMPD during the past three years.

## II.     JURISDICTION & VENUE

4.     At all times relevant to this action, each Plaintiff was a resident of Clark County, Nevada.

5.     Upon information and belief, each member of the proposed Class was a resident of Clark County, Nevada at all times relevant to this action.

6.     Defendant LVMPD's primary place of business is Clark County, Nevada.

7.     The events giving rise to the claim all occurred in Clark County, Nevada.

8.     Jurisdiction over the FLSA claims is proper pursuant to 29 U.S.C. § 216(b).

9.     The aggregate value of the individual claims of all potential class members exceeds $15,000. NRCP 23(b).

## III.     PARTIES

10.     Plaintiff Daniel Coyne ("Officer Coyne") is a resident of Clark County, Nevada and has been employed full time by LVMPD as a non-exempt hourly employee from January of 2008 until the present.

11.     Plaintiff David Denton ("Officer Denton") is a resident of Clark County, Nevada and has been employed full time by LVMPD as a non-exempt hourly employee from June 2001 until the present.

12.    Plaintiff Sean Bollig ("Officer Bollig") is a resident of Clark County, Nevada and has been employed full time by LVMPD as a non-exempt hourly employee from July 2007 until the present.

13.    Defendant LVMPD is a metropolitan police department duly organized under Chapter 280 of the Nevada Revised Statutes.

14.    LVMPD is a "public agency" within the meaning of 29 U.S.C. § 203(x), and an "employer" within the meaning of 29 U.S.C. § 203(d), NRS 608.011, and section Article 15, section 16(C) of the Nevada Constitution.

15.    LVMPD operates as the law enforcement agency within the unincorporated areas of Clark County, Nevada and the incorporated areas of the City of Las Vegas.

16.    The Plaintiffs in this action and all Class Members have been "employees" of LVMPD within the meaning of 29 U.S.C. § 203(e) for some or all of the three-year period prior to the filing of the Complaint and, thus, are entitled to the rights, protections, and benefits provided under the FLSA.

## IV.    COLLECTIVE AND CLASS ACTION ALLEGATIONS

17.    Plaintiffs bring this action on behalf of themselves and all other similarly situated and typical employees as both a collective action under the FLSA (29 U.S.C. § 216) and a true class action under Nevada law (NRCP 23).

18.    The statute of limitations under the FLSA is three (3) years for willful violations. 29 U.S.C. § 255(a).

19.    The statute of limitations for violation of an action upon a liability created by statute is 3 years. NRS 11.190(3)(a).

20.    The statute of limitations for failure to pay the minimum wage is two (2) years. NRS 608.260

21.    The statute of limitations for violation of the requirements set forth in NRS 608.020 to 608.050, inclusive, is 2 years after the employer's failure to pay wages, compensation, or salary owed to an employee at the termination of employment. Sen. B. 245, 2021 Leg., 81st Sess. (Nev. 2021).

22.    The Classes are defined as follows:[1]

a.    **The Employee Class** (for purposes of violations of the FLSA, NRS 608.016, NRS 608.250, and the Nevada Constitution art. 15, sec. 16): All persons employed by LVMPD as a full time, non-exempt hourly peace officer who worked one or more scheduled overtime shifts during the three years prior to the filing of this Complaint and is a member of the PPA.

b.    **The Wages Due and Owing Class** (for purposes of violations of NRS 608.020-608.050 and Sen. B. 245): All members of the Employee Class who are former employees who were discharged, quit, or laid off within the last two years.

23.    Pursuant to 29 U.S.C. 216(b), an action to recover damages under the FLSA "may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

24.    A Collective Action under the FLSA is appropriate because the Class Representatives are similarly situated to the proposed class members they seek to represent because they share similar issues of law and fact material to the disposition of their FLSA claims. Specifically, each was (1) employed by LVMPD as non-exempt hourly employee during the relevant period, (2) is a member of the PPA, (3) worked one or more scheduled overtime shifts during the relevant period, and (3) did not receive overtime premium pay of 1½ of his or her regular rate of pay for work performed before and after the scheduled overtime shifts.

25.    Pursuant to NRCP 23, "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

---

[1]    Unless otherwise specified, references to "Class Members" or the "Class" shall refer to the Employee Class.

   a. <u>**Numerosity**</u>: The PPA currently has more than 3000 members, and Plaintiffs estimate that more than one-third of all PPA members worked one or more scheduled overtime shifts during the relevant period. Accordingly, the Class is estimated to exceed 1000 individual members and it would be impracticable to seek to join all members.[2]

   b. <u>**Commonality**</u>: Common questions of law and fact affecting all Class Members predominate over any questions affecting only individual members. The class has been tailored to include Class Members who were subject to a common LVMPD policy and/or practice and were not paid any wages for pre-shift and post-shift activities. Accordingly, the court will be asked to determine whether the specific types of pre-shift and post-shift activities alleged below are compensable "work" under Nevada law.

   c. <u>**Typicality**</u>: Plaintiffs' claims are typical of all Class Members because each Plaintiff suffered injuries that are similar to all other class members and were the result of the same set of LVMPD's rules, policies, and/or practices, which required them to perform pre-shift and post-shift work without any compensation.

   d. <u>**Fairness**</u>: Plaintiffs will fairly and adequately represent the interests of the Class because Plaintiffs are members of the Class, they have issues of law and fact in common with all members of the Class, and they do not have interests that are antagonistic to Class members. Plaintiff and counsel are aware of their fiduciary responsibilities to Class Members and are determined to discharge those duties diligently and vigorously by seeking the maximum possible recovery for Class Members as a group.

26. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of all members of the Class is

---

[2]    Counsel has already been contacted by 91 additional class members who have requested to opt-in to the FLSA class. These individuals shall immediately file the appropriate Consent upon the Court's preliminary certification of the FLSA Class and approval of a Notice and Consent form. These additional individuals are identified on Exhibit 1.

impractical, and the prosecution of separate actions by or against individual members of the class would create a risk of:

    a. Inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class; and

    b. Adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## V.    STATEMENT OF FACTS

### A.    LVMPD Employment of Peace Officers

27.    Police officers and corrections officers (jointly, "Officers") are members of the LVMPD who are charged with the duty to preserve the law, protect life and property, and enforce those Federal statues, laws of the State of Nevada, ordinances of the County of Clark, and ordinances of the City of Las Vegas, which the department is required to enforce by law or policy.

    a. Police officers are duly sworn individuals who are authorized to execute police powers and are charged with law enforcement responsibilities in connection with the LVMPD.

    b. Corrections officers are duly sworn individuals who are authorized to execute limited police powers and are charged with enforcement of correctional and detention responsibilities in connection with the LVMDP.

28.    The work week for each Plaintiff and Class Member is either (a) forty (40) hours per week, or (b) 80 hours bi-weekly for which he or she is compensated on an hourly basis at a rate not less than 1½ times the minimum rate set forth in NRS 608.250.

29.    Each Plaintiff and Class Member's work week begins at the start of the officer's first scheduled shift following his or her regular days.

30.    For all working hours (or portions thereof) in excess of 80 hours per pay period, ("overtime"), Plaintiffs and Class Members are entitled to compensation at a premium rate of 1½ of their regular rate of pay ("overtime pay"[3]).

31.    During the three years prior to the initiation of this action, Plaintiffs (and each Class Member) have each worked overtime hours without being compensated for all of the overtime hours worked.

32.    Specifically, Plaintiffs and each Class Member have worked scheduled overtime shifts[4] for which they received overtime pay for the duration of the *scheduled* shift time but were not paid for the entire continuous workday because they received no compensation for hours spend completing pre-shift and post-shift activities that were integral and indispensable to the principal activities for which they were employed.

**B.    Overtime Assignments for Which Back Pay is Sought**

33.    Plaintiffs and each Class Members seek back pay for the pre-shift and post-shift hours worked on three categories of scheduled overtime shifts:

   a.  Special Events;

   b.  Jail; and

   c.  Supervising prisoners at medical facilities.

34.    Upon information and belief, LVMPD needs to fill between 700 and 1000 scheduled overtime shifts overtime shifts each week.

35.    All three categories of scheduled overtime shifts required Plaintiffs and Class Members to spend a significant amount of time pre-shift and post-shift performing tasks that were essential to the shift's principal activities.

**1.    *Special Events***

36.    Special Events shifts include major community events that LVMPD anticipates will require an unusual amount of agency resources (e.g., holidays, major sporting events, parades,

---

[3]    Plaintiffs do not challenge their rate of pay for overtime work.

[4]    Plaintiffs do not allege FLSA violations related to overtime worked when held over on his or her regular shift or when called back to work with less than 12 hours' notice.

Laughlin River Run, etc.) and smaller events for which a private business or citizen contracts[5] with LVMPD to have officers provide police services.

37.     When working Special Events, officers are expected to provide a highly visible (uniformed) presence at the event while providing crowd control, directing traffic, detecting problems, driving a prisoner transport, assisting event staff with maintaining public order, and otherwise ensuring public safety and security.

38.     The scheduled shift time for a Special Events shift represents the time that an officer is expected to be present at the location where the Special Event is held. However, an officer working a Special Events shift is required to perform significant unpaid pre-shift and post-shift activities that are integral and indispensable to the principal activities that Plaintiffs perform during the scheduled shift time.

39.     Prior to reporting to the location of the Special Event, officers are required to report to an LVMPD facility to collect specialized equipment and/or vehicles necessary to the performance of the officer's assigned duties at the event.

    a.  Police officers must first report to their assigned area command to collect their body worn camera ("BWC"), and/or any specialized equipment (e.g., bicycles, specialized safety gear, LVMPD vehicle,[6] etc.) that is required and authorized for the shift. If required to drive a department vehicle, LVMPD policy requires the officer to perform a vehicle inspection and complete a Vehicle Condition Report prior to operation.

    b.  Corrections officers working a Special Event are assigned prisoner transport duties and must first report to the Clark County Detention Center ("CCDC"), to

---

[5]     Special Events services contracted by private businesses or citizens are referred to a "reimbursable overtime" because LVMPD is paid by a third-party to provide these services. Upon information and belief, LVMPD bills third-parties $90.00 per hour for each officer assigned to work a "reimbursable overtime" shift—an hourly rate which exceeds the hourly rate it pays the officers to work Special Events shifts (approximately $45.00 to $75.00 per hour depending on the officer's regular duty assignment and seniority).

[6]     On some occasions, a police officer must travel from their assigned area command to another area command to obtain a patrol vehicle due to an event-specific requirement imposed by LVMPD or because there are no patrol vehicles available at his or her assigned area command.

1    check out an electronic control device (a "taser"), radio, transport vehicle, and

2    restraints.[7] Pursuant to LVMPD policy, the officer must also perform a vehicle

3    inspection and complete a Vehicle Condition Report prior to operating the

4    vehicle.

5    40.   Only after reporting to an LVMPD facility to collect the specialized equipment

6    required for the assignment does the officer proceed to the Special Event location.

7    41.   Upon arriving at the Special Event, the officers are required to park in a specifically

8    designated area (which is often located a significant distance from the event), and then walk to the

9    area where the shift briefing will occur. Pursuant to LVMPD policy, officers must arrive for the

10   shift briefing prior to the scheduled shift start time.

11   42.   Officers are not paid for time spent obtaining specialized equipment, traveling,

12   parking, or walking to their duty station—activities that all occur prior to the scheduled shift start

13   time.

14   43.   After the scheduled end of the shift, officers are required to reverse the pre-shift

15   process and to return all specialized equipment.

16   a.   While traveling back to area command, a police officer who checked out a vehicle

17   is also required to stop and refuel the vehicle because LVMPD policy requires

18   that vehicles must be returned with a full tank of gas and a clean interior.

19   b.   While traveling back to CCDC, a corrections officer must refuel a transport

20   vehicle that has less than half a tank of gas. Corrections officers must obtain fuel

21   from a from a contracted fuel source.

22   44.   Officers are not paid for time spent walking back to their vehicle, refueling, traveling

23   back to CCDC or area command, or returning specialized equipment.

24   45.   These pre-shift and post-shift activities usually take at least **60 minutes before** and

25   at least **30 minutes after** the scheduled shift time, resulting in each officer working an hour and a

26   half (and often more) of uncompensated overtime for every Special Event shift worked.

27   _____

28   [7]   Unlike uniformed police officers, corrections officers are not issued radios, tasers, or handcuffs as part of their uniform.

## 2. *Jail*

46.    Police officers may work overtime at CCDC or the North Valley Complex ("NVC"), where they are charged with maintaining custody and discipline of prisoners and providing security for the facility, the employees, and prisoners. Corrections officers and police officers working overtime shifts in the jail are responsible for all aspects of supervising, guarding, escorting, and disciplining prisoners.

47.    The scheduled shift time for a jail shift represents the time that an officer is expected to be present at the jail facility, completely ready for duty. However, a police officer who is assigned a BWC and working a jail shift is required to perform significant unpaid pre-shift and post-shift activities that are integral and indispensable to the principal activities that an officer performs during the scheduled shift time.

48.    Before reporting to the jail facility to work an overtime shift, a police officer must first report to their assigned area command to collect their BWC.

49.    After collecting their BWC, the officer must travel to CCDC or NVC.

50.    Upon arriving at the jail and before reporting for duty, LVMPD policy requires police officers to place their BWCs in a gun locker when securing their firearm.

51.    After securing their BWC and firearm in a gun locker, police officers must undergo a security screening designed to prevent weapons or other contraband from entering the facility, which is integral and indispensable to the officer's ability to safely maintain custody and discipline of prisoners and providing security.

52.    Police officers working scheduled overtime shifts in a jail facility are not compensated for the time collecting their BWC from their assigned area command, traveling to CCDC, securing their BWC and firearm in a gun locker, and undergoing a security screening— activities that all occur prior to the scheduled shift start time.

53.    After the scheduled end time of a jail shift, police officers are not paid for the time spent retrieving their firearm and BWC, traveling back to their assigned area command, and checking in their BWC for video upload and charging.

54.     These pre-shift and post-shift activities usually take at least **30 minutes before** and at least **30 minutes after** the scheduled shift time, resulting in an hour (or more) of uncompensated overtime for every jail shift worked by a police officer who is assigned a BWC.

### 3.     *Supervising Prisoners at Medical Facilities*

55.     Officers working scheduled overtime may be assigned to transport and/or supervise prisoners at medical facilities.

56.     The scheduled shift time for a medical facility shift represents the time that the officer must be present at the assigned duty location, completely prepared for duty.

57.     However, an officer working a medical facility shift is required to perform significant unpaid pre-shift and post-shift activities that are integral and indispensable to the principal activities that Plaintiffs perform during the scheduled shift time—transporting and supervising prisoners.

58.     Before reporting for duty, each officer must obtain specialized equipment integral to performing the principal duties assigned during a shift supervising prisoners at a medical facility.

59.     If assigned to supervise prisoners who have previously been transported to a medical facility:

   a.  Police officers who are assigned a BWC must first report to their assigned area command to collect their BWC and then travel to the medical facility to report to the duty location by the scheduled shift start time.

   b.  Corrections officers must first report to CCDC to check out a taser and a radio and then travel to the medical facility to report to the duty location by the scheduled shift start time.

60.     If an officer is assigned prisoner transport duties, the office must also obtain a prisoner transport vehicle from CCDC.

   a.  A police officer must travel from his or her assigned area command (first location) to CCDC (second location) to check out a transport vehicle and specialized restraints (handcuffs, belly chains and/or leg irons), perform a vehicle

1    inspection, and complete a Vehicle Condition Report, before traveling to the

2    medical facility (third location).

3        b.  After checking out a taser and a radio at CCDC, a corrections officer will have to

4            also check out a transport vehicle and specialized restraints (handcuffs, belly

5            chains and/or leg irons), perform a vehicle inspection, and complete a Vehicle

6            Condition Report, before traveling to the medical facility.

7    61.    After the end of the scheduled shift time, officers must travel to a contracted fuel

8    source to refuel the prisoner transport vehicle (if it has less than half a tank of gas) and then reverse

9    the pre-shift process to return and check in all specialized equipment.

10    62.    Officers working scheduled overtime shifts at a medical facility are not compensated

11    for any of the time spent pre-shift or post-shift collecting/returning specialized equipment at their

12    assigned area command, traveling between their area command and CCDC (if a police officer),

13    checking in/out a prisoner transport vehicle and specialized restraints, and traveling between CCDC

14    and the medical facility.

15    63.    These pre-shift and post-shift activities usually take at least **30 minutes before** and

16    at least **30 minutes after** the scheduled shift time, resulting in an hour (or more) of uncompensated

17    overtime for every medical facility shift worked.

18    **C.**    **Pre-Shift and Post-Shift Activities are Integral and Indispensable to Plaintiffs'**
            **Principal Activities.**

19

20    64.    Performance of pre-shift and post-shift activities (obtaining specialized equipment

21    and transporting it to the shift location) is integral and indispensable to the principal activities

22    Plaintiffs and each Class Member were assigned to perform, which could not be performed if not

23    for the pre-shift and post-shift work.

24    65.    LVMPD's policies related to scheduled overtime shifts require Plaintiffs and each

25    Class Member to report to one location where they check out the specialized equipment that is

26    needed for the shift and then travel with the specialized equipment to a second location where they

27    report for duty at the scheduled shift time.

28

Page 12 of 28

66.     LVMPD policies include the following requirements for use of LVMPD vehicles, which require Plaintiffs to travel between LVMPD facilities before and after a shift:

    a.  Prior to operating a vehicle, the operator shall check the vehicle and ensure it is in good working order;

    b.  Officers assigned a patrol vehicle must complete a Vehicle Condition Report at the beginning of each shift – recording any discrepancies such as safety problems, poor performance, damage, or missing items;

        a.  Corrections vehicles must obtain fuel from a contracted fuel source;

        b.  Police vehicles shall be returned to the station at the end of a trip/tour with a full tank of gas and with a clean interior.

        c.  Corrections vehicles must be returned to CCDC with at least a half tank of fuel and with a clean interior.

67.     When Plaintiffs and Class Members are assigned duties that include driving an LVMPD vehicle (such as when an officer is assigned to prisoner transport), picking up the vehicle and traveling to the shift location is work that essential to the performance of activities assigned to the officer during the shift.

68.     While in a jail facility or when supervising and transporting prisoners, officers use radios to communicate with other staff while on shift, which includes using a radio to alert other staff of dangerous conditions or call for relief while on shift.  The ability to communicate rapidly and efficiently is essential to ensuring the effective operation of the jail facility and the safety of jail staff and prisoners.

69.     When supervising and transporting prisoners, tasers are essential to an officer's ability to respond to an inmate who poses an immediate safety threat.

70.     Officers operating prisoner transport vehicles are authorized to use handcuffs, belly chains and/or leg irons, as appropriate for the transporting vehicle and security requirements, to prevent prisoners from escaping or posing a danger to themselves or others.

71.    For police officers assigned a BWC, checking out a BWC is integral and indispensable to their performance of any principal activity during a scheduled overtime shift because it is required by NRS 289.830[8] and LVMPD policies.

72.    In accordance with NRS 289.830, LVMPD issues (and assigned by serial number) a BWC to each Police Officer who routinely interacts with the public.

73.    LVMPD policies effectively require that an officer's BWC to be docked at his or her assigned area command[9] after every shift.

    a.  An officer issued a BWC must wear their assigned camera at all times while in uniform;

    b.  Officers must check at the beginning of shift that the BWC has a fully charged battery and is functioning properly; and

    c.  Each BWC must be placed into its docking station for uploading at the end of each shift.

74.    Therefore, when not in use, BWCs are kept in a docking station at an officer's area command, which allows recordings to be uploaded and the battery recharged before the next shift (a process that can take several hours).

75.    As a general rule, officers are not issued docking stations for their home and no Plaintiff or Class Member has been issued a home-dock for his or her BWC.

76.    Because LVMPD requires all Police Officers assigned a BWC to perform these activities immediately before and after their scheduled shift and because Police Officers cannot effectively, legally, and safely complete their assigned overtime duties without performing these pre-shift and post-shift activities, this time is compensable time under the FLSA and Nevada law.

---

[8]    NRS 289.830 states that "[a] law enforcement agency shall require uniformed peace officers that it employs and who routinely interact with the public to wear a portable event recording device while on duty" and "adopt policies and procedures governing the use of portable event recording devices."

[9]    LVMPD has 11 area commands spread across the Las Vegas valley.

## VI.    THE NAMED PLAINTIFFS/CLASS REPRESENTATIVES

77.    For some or all of the three years prior to filing the Complaint, each Plaintiff and Class Member was a member of the LVMPD and employed full time as either a police officer or corrections officer.

### A.    Daniel Coyne

78.    From January 16, 2008, until February 16, 2016, Officer Coyne was employed full-time by LVMPD as a Police Officer.

79.    In February 2016, Officer Coyne returned to the academy and was trained as a Corrections Officer.

80.    Officer Coyne has been employed as a full-time by LVMPD as a Corrections Officer since graduating from the academy in 2016.

81.    From February 1, 2019, until August 7, 2020, Officer Coyne worked overtime shifts approximately 3 days per week—an estimated 237 overtime shifts—in addition to his scheduled duty shifts (which totaled at minimum of 40 hours per week).

82.    For virtually all of Officer Coyne's scheduled overtime shifts during the relevant time period, he was assigned to transport prisoners to and from medical facilities.

83.    Prior to his scheduled shift time, LVMPD procedures required Officer Coyne to report to CCDC to check out a taser and a radio, check out a transport vehicle and specialized restraints (handcuffs, belly chains and/or leg irons), perform a vehicle inspection, and complete a Vehicle Condition Report, before traveling to the medical facility and reporting for the scheduled beginning of his overtime shifts.

84.    After the scheduled end of his overtime shifts, Officer Coyne was required to travel to a contracted fuel source to refuel the prisoner transport vehicle (if it had less than half a tank of gas) and then reverse the pre-shift process to return and check in all specialized equipment.

85.    Officer Coyne was not paid for performing these pre-shift and post-shift activities.

### B.    David Denton

86.    Since June 25, 2001, Officer Denton has been employed full-time by LVMPD as a Police Officer.

87.    Since February 1, 2019, Officer Denton has worked approximately 611 scheduled overtime shifts—in addition to his scheduled duty shifts (which totaled at minimum of 40 hours per week).

    a.   From February 1, 2019, through December 31, 2019, Officer Denton worked an estimated 176 scheduled overtime shifts.

    b.   In 2020, Officer Denton worked estimated 189 scheduled overtime shifts.

    c.   In 2021, Officer Denton worked estimated 229 scheduled overtime shifts.

    d.   Between January 1, 2022, and January 31, 2022, Officer Denton worked an estimated 17 scheduled overtime shifts.

88.    From mid-2016 through February 2020, Officer Denton was a patrol officer assigned to South Central Area Command and was assigned a BWC, which he would dock at South Central Area Command after each shift.

89.    While a Patrol Officer, Officer Denton worked all three types of scheduled overtime shifts, which required him to travel to his assigned area command and collect his BWC (and any other assigned equipment) before traveling to the shift location and reporting for duty prior to the scheduled start time of any overtime shift.

    a.   When working a Special Events overtime shift, Officer Denton would have to first report to South Central Area Command to collect his BWC, and/or any specialized equipment (e.g., bicycles, specialized safety gear, LVMPD vehicle, etc.) that was required and authorized for the shift.  If required to drive a department vehicle to the Special Event, LVMPD policy required that Officer Denton perform a vehicle inspection and complete a Vehicle Condition Report prior to operation.  Only after collecting his BWC and any other specialized equipment required for the assignment was Officer Denton able to proceed to the event location, park in the designated area, and walk to the location where the shift briefing would occur.

87.     Since February 1, 2019, Officer Denton has worked approximately 611 scheduled overtime shifts—in addition to his scheduled duty shifts (which totaled at minimum of 40 hours per week).

    a.  From February 1, 2019, through December 31, 2019, Officer Denton worked an estimated 176 scheduled overtime shifts.

    b.  In 2020, Officer Denton worked estimated 189 scheduled overtime shifts.

    c.  In 2021, Officer Denton worked estimated 229 scheduled overtime shifts.

    d.  Between January 1, 2022, and January 31, 2022, Officer Denton worked an estimated 17 scheduled overtime shifts.

88.     From mid-2016 through February 2020, Officer Denton was a patrol officer assigned to South Central Area Command and was assigned a BWC, which he would dock at South Central Area Command after each shift.

89.     While a Patrol Officer, Officer Denton worked all three types of scheduled overtime shifts, which required him to travel to his assigned area command and collect his BWC (and any other assigned equipment) before traveling to the shift location and reporting for duty prior to the scheduled start time of any overtime shift.

    a.  When working a Special Events overtime shift, Officer Denton would have to first report to South Central Area Command to collect his BWC, and/or any specialized equipment (e.g., bicycles, specialized safety gear, LVMPD vehicle, etc.) that was required and authorized for the shift.  If required to drive a department vehicle to the Special Event, LVMPD policy required that Officer Denton perform a vehicle inspection and complete a Vehicle Condition Report prior to operation.  Only after collecting his BWC and any other specialized equipment required for the assignment was Officer Denton able to proceed to the event location, park in the designated area, and walk to the location where the shift briefing would occur.

b. When working a jail overtime shift at CCDC or the NVC, Officer Denton would first report to South Central Area Command to collect his BWC before traveling to CCDC or the NVC.

c. When assigned to supervise prisoners at medical facilities, Officer Denton was required to first report to South Central Area Command to collect his BWC and then travel to the medical facility to report to the duty location by the scheduled shift start time. When assigned to prisoner transport, Officer Denton would have to make a second stop at CCDC to check out a transport vehicle and specialized restraints (handcuffs, belly chains and/or leg irons), perform a vehicle inspection, and complete a Vehicle Condition Report, before traveling to the medical facility. After the scheduled end of his overtime shifts, Officer Denton was required to reverse the pre-shift process to return and check in all specialized equipment (and refuel the prisoner transport vehicle if it has less than half a tank of gas).

90. Since March 2020, Officer Denton has been a detective and no longer is assigned a BWC, but he continues to work all three types of scheduled overtime shifts.

91. While Officer Denton no longer has to travel to his area command to collect a BWC, some shifts still require him to stop at one location to collect specialized equipment before reporting to the overtime shift location.

a. When working a Special Event, there are still instances when Officer Denton is required to collect specialized equipment from an LVMPD facility before traveling to the Special Event location.

b. When assigned to transport prisoners to/from medical facilities, Officer Denton is still required to stop at CCDC to check out a transport vehicle and specialized restraints (handcuffs, belly chains and/or leg irons), perform a vehicle inspection, and complete a Vehicle Condition Report, before traveling to the medical facility where prisoners are awaiting transport.

1   After the scheduled end of his overtime shifts, Officer Denton must reverse the pre-shift process to

2   return and check in all specialized equipment (and refuel the prisoner transport vehicle if it has less

3   than half a tank of gas).

4       92.     Officer Denton was not paid for performing these pre-shift and post-shift activities.

5               **C.    Sean Bollig**

6       93.     Officer Bollig has been employed full-time by LVMPD as a Police Officer since

7   approximately July 2007.

8       94.     Since February 1, 2019, Officer Bollig has worked approximately 241 scheduled

9   overtime shifts—in addition to his scheduled duty shifts (which totaled at minimum of 40 hours per

10  week).

11              a.  From February 1, 2019, through December 31, 2019, Officer Bollig worked

12                  an estimated 100 scheduled overtime shifts.

13              b.  In 2020, Officer Bollig worked estimated 72 scheduled overtime shifts.

14              c.  In 2021, Officer Bollig worked estimated 57 scheduled overtime shifts.

15              d.  Between January 1, 2022, and January 31, 2022, Officer Bollig worked an

16                  estimated 12 scheduled overtime shifts.

17      95.     From December 2016 until August 2020, Officer Bollig was a staff member at the

18  LVMPD police academy.  While training officers are not assigned a BWC, some overtime shifts

19  required Officer Bollig to report to an LVMPD facility to collect specialized equipment before

20  reporting to the overtime shift location.

21              a.  When working a Special Event, there were times when Officer Bollig was

22                  required to collect specialized equipment from an LVMPD facility before

23                  traveling to the Special Event location.

24              b.  When assigned to transport prisoners to/from medical facilities, Officer Bollig

25                  was required to stop at CCDC to check out a transport vehicle and specialized

26                  restraints (handcuffs, belly chains and/or leg irons), perform a vehicle inspection,

27                  and complete a Vehicle Condition Report, before traveling to the medical facility

28                  where prisoners are awaiting transport.

1  After the scheduled end of these overtime shifts, Officer Bollig would reverse the pre-shift process
2  to return and check in all specialized equipment (and refuel the prisoner transport vehicle if it has
3  less than half a tank of gas).

4      96.    Since August 2020, Officer Bollig has been assigned to LVMPD's Airport Bureau,
5  which provides Harry Reid International Airport with law enforcement support.

6      97.    While assigned to the Airport Bureau, Officer Bollig has been assigned a BWC,
7  which he docks at the LVMPD's office at Harry Reid International Airport (the "Airport").

8          a.  When working a Special Events overtime shift, Officer Bollig must first report to
9              the Airport to collect his BWC, and/or any specialized equipment (e.g., bicycles,
10             specialized safety gear, LVMPD vehicle, etc.) that was required and authorized
11             for the shift.  If required to drive a patrol vehicle to the Special Event, Officer
12             Bollig must travel from the Airport to an area command to collect the vehicle
13             (because airport vehicles are limited to use during regular shift duties).
14             Additionally, LVMPD policy required that Officer Bollig perform a vehicle
15             inspection and complete a Vehicle Condition Report prior to operation.  Only
16             after collecting his BWC and any other specialized equipment required for the
17             assignment is Officer Bollig able to proceed to the event location, park in the
18             designated area, and walk to the location where the shift briefing would occur.

19         b.  When working a jail overtime shift at CCDC or the NVC, Officer Bollig must
20             first report to the Airport to collect his BWC before traveling to CCDC or the
21             NVC before the scheduled start time for his overtime shift.

22         c.  When assigned to supervise prisoners at a medical facility, Officer Bollig is
23             required to first report to the Airport to collect his BWC and then travel to the
24             medical facility to report to the duty location by the scheduled shift start time.
25             When assigned to prisoner transport, Officer Bollig must make a second stop at
26             CCDC to check out a transport vehicle and specialized restraints (handcuffs, belly
27             chains and/or leg irons), perform a vehicle inspection, and complete a Vehicle
28             Condition Report, before traveling to the medical facility.

1   After the scheduled end of these overtime shifts, Officer Bollig must reverse the pre-shift process to

2   return and check in all specialized equipment (and refuel the prisoner transport vehicle if it has less

3   than half a tank of gas).

4       98.    Officer Bollig was not paid for performing these pre-shift and post-shift activities.

5                **VII.   CAUSES OF ACTION**

6             **Cause of Action No. 1:  Violation of 29 U.S.C. 207(a)**

7                     **Failure to Pay Overtime**
              (On Behalf of Plaintiffs and All Class Members)

8       99.    Plaintiffs reallege and incorporate by reference the averments contained in all

9   previous paragraphs, inclusive, as though fully set forth herein.

10      100.    The FLSA requires employers to pay employees for all of the work they perform,

11   and "all hours worked." 29 U.S.C. §§ 206, 207; *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir.

12   2003), *aff'd*, 546 U.S. 21 (2005).

13      101.    Section 7(a) of the FLSA (29 U.S.C. § 207(a)) provides that an employer shall

14   compensate its employees at a rate not less than one and one-half times their regular rate for each

15   hour of work performed in excess of 40 hours per week (or 80 hours bi-weekly).

16      102.    For the purposes of the FLSA, "work" includes all "physical or mental exertion

17   (whether burdensome or not) controlled or required by the employer and pursued necessarily and

18   primarily for the benefit of the employer." *Tenn. Coal, Iron & R.R Co. v. Muscoda Local No. 123*,

19   321 U.S. 590, 598 (1944). Thus, "[a]n employer may not arbitrarily fail to count as hours worked

20   any part, however small, of the employee's fixed or regular working time or practically

21   ascertainable period of time he is regularly required to spend on duties assigned to him." 29 C.F.R.

22   785.47.

23      103.    "[T]he statutory workweek includes all time during which an employee is

24   necessarily required to be on the employer's premises, on duty or at a prescribed workplace."

25   *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688-689 (1946).

26      104.    While mere "preliminary" or "postliminary" activities are not compensable under the

27   FLSA, employers must compensate employees for any activity that is "an integral and indispensable

28   part of the principal activity of the employment." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956).

105.    "[A]n activity is integral and indispensable to the principal activities that an employee is employed to perform—and thus compensable under the FLSA—if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 37 (2014).

106.    Furthermore, "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to . . . pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." 29 C.F.R. § 785.38.

107.    Accordingly, all "[p]eriods of time between the commencement of the employee's first principal activity and the completion of his last principal activity on any workday must be included in the computation of hours worked to the same extent as would be required if the Portal Act had not been enacted." 29 C.F.R. § 790.6(a).

108.    For each scheduled overtime shift worked during the previous three years, Plaintiffs and all Class Members, have been entitled to be compensated with overtime pay for time spent performing "work" prior to the start time of their paid shift and after the end of their paid shift.

109.    LVMPD, however, has failed to count as "work" the pre-shift and post-shift activities that Plaintiffs and all Class Members regularly perform outside of their paid shift times, including the time spent reporting to area command to collect their BWCs, collect and check out any necessary specialized equipment, sign out a vehicle, and travel with the required specialized equipment to the assigned shift location.

110.    Performance of 60 (or more) minutes of unpaid work during every scheduled overtime shift was a regular and recurring event. Plaintiffs and all Class Members have performed unpaid work each time they work a scheduled overtime shift.

111.    Because LVMPD has failed to count as compensable work hours the time spent on pre-shift and post-shift activities, Plaintiffs have not been compensated for all hours of overtime work as required by the FLSA.

1    112.   By failing and refusing to pay Plaintiffs and other similarly situated employees the

2    overtime pay required under law, LVMPD has violated, and is continuing to willfully violate the

3    FLSA

4    113.   As a result of LVMPD's willful and purposeful violations of the FLSA, there have

5    become due and owing to each of the Plaintiffs and all Class Members various amounts that have

6    not yet been precisely determined.  The employment and work records for each Plaintiff and all

7    Class Members are in the exclusive possession, custody, and control of LVMPD and its public

8    agencies and Plaintiffs are unable to state at this time the exact amounts owing to each of them.

9    114.   At all times relevant hereto, LVMPD and its agents and representatives were aware

10    of their obligations to properly calculate the overtime compensation owed to Plaintiffs and all Class

11    Members and knew that it had failed to compensate Plaintiffs and all Class Members for all

12    overtime hours worked.

13    115.   LVMPD actions and omissions as alleged herein were knowing, willful, bad faith,

14    and reckless violations of 29 U.S.C. § 207 within the meaning of 29 U.S.C. § 255(a).

15    116.   As a result of the LVMPD's willful violations of the FLSA, it has unlawfully

16    withheld overtime compensation from each Plaintiff and all Class Members for which LVMPD is

17    liable pursuant to 29 U.S.C. §§ 216(b) and 255, together with an additional equal amount as

18    liquidated damages, interest, reasonable attorneys' fees, and the costs of this action.

19    117.   As a result of LVMPD's unlawful conduct, Plaintiffs and Class Members seek

20    damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and

21    interest as provided by law.

**Cause of Action No. 2:  Violation of NRS 608.016 & 608.140**
**Failure to Pay for All Hours Worked**
(On Behalf of Plaintiffs and All Class Members)

24    118.   Plaintiffs reallege and incorporate by reference the averments contained in all

25    previous paragraphs, inclusive, as though fully set forth herein.

26    119.   NRS 608.140 provides that an employee has a private right of action for unpaid

27    wages "[w]henever a[n] . . . employee shall have cause to bring suit for wages earned and due

28    according to the terms of his or her employment, and shall establish by decision of the court or

verdict of the jury that the amount for which he or she has brought suit is justly due, and that a demand has been made, in writing, at least 5 days before suit was brought, for a sum not to exceed the amount so found due, the court before which the case shall be tried shall allow to the plaintiff a reasonable attorney fee, in addition to the amount found due for wages and penalties, to be taxed as costs of suit."

120.    Plaintiffs made a demand for unpaid wages upon Defendant pursuant to NRS 608.140, but satisfactory payment was not received.

121.    NRS 608.016 provides that "an employer shall pay to the employee wages for each hour the employee works."

122.    NAC 608.115 provides that "[a]n employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee."

123.    Once the work day has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's applicable rate of pay, whether scheduled or not.

124.    The pre-shift and post-shift activities described above constitute "work" within the definition of NAC 608.115 and within the meaning of NRS 608.016.

125.    By failing to compensate Plaintiffs and Class Members for the pre-shift and post-shift activities described above, LVMPD failed to pay Plaintiffs and Class Members for all hours worked in excess of 40 hours per workweek (or 80 hours bi-weekly).

126.    As a result of LVMPD's unlawful conduct, Plaintiffs and Class Members seek damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and interest as provided by law.

**Cause of Action No. 3: Violation of NRS 608, 250, 608.260, and the Nevada Constitution**
**Failure to Pay Minimum Wage for All Hours Worked**
(On Behalf of Plaintiffs and All Class Members)

127.    Plaintiffs reallege and incorporate by reference the averments contained in all previous paragraphs, inclusive, as though fully set forth herein.

128.    Article 15 Section 16 of the Nevada Constitution sets forth the requirements the minimum wage requirements in the State of Nevada and further provides that "[t]he provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against her or her employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded her or her reasonable attorney's fees and costs."

129.    NRS 608.250 provides that an employer shall pay to each employee an amount not less than the minimum wage.

130.    NRS 608.260(1) states:

> (1) If any employer pays any employee a lesser amount than the minimum wage set forth in NRS 608.250, the employee may, at any time within 2 years, bring a civil action against the employer.

> (2) A contract between the employer and the employee or any acceptance of a lesser wage by the employee is not a bar to the action. action brought pursuant to subsection 1:

>> (a) The employee is entitled to all remedies available under the law or in equity appropriate to remedy the violation by the employer which may include, without limitation, back pay, damages, reinstatement or injunctive relief; and

>> (b) The court must award the employee reasonable attorney's fees and costs.

1  131.    By failing to compensate Plaintiff and all other Class Members for the time spent

2  engaging in pre and post-shift activities, Defendant failed to pay Plaintiffs and all other Class Members

3  the requisite minimum wage for all hours worked in violation of the Nevada Constitution and NRS

4  608.250.

5  132.    As a result of LVMPD's unlawful conduct, Plaintiffs and Class Members seek

6  damages in an aggregate amount that exceeds $15,000, together with attorneys' fees, costs, and

7  interest as provided by law.

8  **Cause of Action No. 4:  Violation of NRS 608.020-608.050 and S.B. 245**
**Failure to Timely Pay All Wages Due and Owing Upon Termination**

9  (On Behalf of Plaintiffs and Wages Due and Owing Class Members)

10  133.    Plaintiffs reallege and incorporate by reference the averments contained in all

11  previous paragraphs, inclusive, as though fully set forth herein.

12  134.    Nevada Senate Bill 245 (2021) creates a private right of action for unpaid wages

13  owed to an employee at the termination of service.  It provides that "[i]f an employer fails to pay

14  wages, compensation or salary to an employee in accordance with the requirements set forth in

15  NRS 608.020 to 608.050, inclusive, the employee may, at any time within 2 years after the

16  employer's failure, bring a civil action against the employer."

17  135.    NRS 608.020 provides that "[w]henever an employer discharges an employee, the

18  wages and compensation earned and unpaid at the time of such discharge shall become due and

19  payable immediately."

20  136.    NRS 608.030 provides that "[w]henever an employee resigns or quits his or her

21  employment, the wages and compensation earned and unpaid at the time of the employee's

22  resignation or quitting must be paid no later than:  (1) The day on which the employee would have

23  regularly been paid the wages or compensation; or Seven days after the employee resigns or quits,

24  whichever is earlier."

25  137.    NRS 608.040(1)(a-b), in relevant part, imposes a penalty on an employer who fails

26  to pay a discharged or quitting employee: "Within 3 days after the wages or compensation of a

27  discharged employee becomes due; or on the day the wages or compensation is due to an employee

28

1  who resigns or quits, the wages or compensation of the employee continues at the same rate from

2  the day the employee resigned, quit, or was discharged until paid for 30-days, whichever is less."

3       138.   NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for

4  the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the

5  contract of employment for each day the employer is in default, until the employee is paid in full,

6  without rendering any service therefor; but the employee shall cease to draw such wages or salary

7  30 days after such default."

8       139.   By failing to pay Plaintiff and all members of the Employee Class for all hours

9  worked in violation of state and federal law, Defendant has failed to timely remit all wages due and

10  owing to all members of the Wages Due and Owing Class.

11       140.   As a result of LVMPD's unlawful conduct, members of the Wages Due and Owing

12  Class who were discharged or quit are owed thirty (30) days wages under NRS 608.040, and

13  members who were discharged or laid off are entitled to an additional thirty (30) days wages under

14  NRS 608.050.

15       141.   As a result of LVMPD's unlawful conduct, Members of the Wages Due and Owing

16  Class seek damages in an aggregate amount that exceeds $15,000, together with attorneys' fees,

17  costs, and interest as provided by law.

18          **Cause of Action No. 5:  Declaratory Relief**
        (On Behalf of Plaintiffs and All Class Members)
19

20       142.   Plaintiffs reallege and incorporate by reference the averments contained in all

21  previous paragraphs, inclusive, as though fully set forth herein.

22       143.   A justiciable controversy exists between Plaintiffs and LVMPD.

23       144.   Pursuant to NRS 30.040, Plaintiffs may have their right to overtime pay determined

24  under the FLSA and Nevada law.

25       145.   Plaintiffs seek a declaratory judgment as follows:

26          a.  Picking up and/or checking out equipment required by LVMPD for the

27            performance of a scheduled overtime shift is an integral and indispensable part of

28

the principal activity of the employment and compensable "work" under the FLSA and Nevada law; and

b. Travel from an LVMPD facility where equipment is picked up to the job site is part of the day's work, and must be counted as hours worked.

## VIII.    PRAYER FOR RELIEF

122.    Plaintiffs, individually and on behalf of all similarly situated individuals and proposed Class Members, request that this Court award each of them the following relief against LVMPD:

a. For an order conditionally certifying the action under the FLSA and providing notice to all members so they may participate in the lawsuit;

b. For an order certifying the action as a traditional class action under Nevada Rule of Civil Procedure Rule 23 on behalf of the proposed class;

c. For an order appointing Officers Coyne, Denton, and Bollig as the Representatives of the class and her counsel as Class Counsel for the class;

d. A declaration of Plaintiffs' right to compensation for hours worked prior to the start time of their paid overtime shifts and after the end of their paid overtime shifts under the FLSA and Nevada law;

e. An award of back pay at the rate of 1½ of their regular rate of pay for all uncompensated overtime hours worked during the three years prior to the filing of this Complaint pursuant to 29 U.S.C. § 216(b);

f. An award of liquidated damages pursuant to 29 U.S.C. § 216(b);

g. An award of attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

h. And award of back pay under Nevada Law at the rate of 1½ of their regular rate of pay for all uncompensated hours worked during the two years prior to the filing of this Complaint;

i. An award of exemplary and punitive damages under Nevada law;

j. An award of attorneys' fees and costs under Nevada law;

k.  For pre- and post-judgment interest at the maximum rate provided by law; and

l.  Any other relief as the Court determines is just and proper.

## IX.  **JURY TRIAL DEMANDED**

123.  Plaintiffs demand a trial by jury on all issues so triable.

DATED this 15th day of February, 2022.

SGRO & ROGER

By: _____
ANTHONY P. SGRO
KELLY B. STOUT
*Attorneys for Plaintiffs*

# EXHIBIT 1

**Consent to Sue for Daniel Coyne**

ANTHONY P. SGRO
Nevada Bar No. 3811
KELLY B. STOUT
Nevada Bar No. 12105
**SGRO & ROGER**
720 South Seventh Street, Third Floor
Las Vegas, Nevada 89101
Telephone: (702) 384-9800
Facsimile: (702) 665-4120
TSgro@sgroandroger.com
KStout@ sgroandroger.com

*Attorneys for Plaintiffs*

DISTRICT COURT
CLARK COUNTY, NEVADA

| | |
|---|---|
| Daniel Coyne, individually and on behalf of those similarly situated; David Denton, individually and on behalf of those similarly situated; and Sean Bollig, individually and on behalf of those similarly situated; | Case No. |
| | Dept. No. |
| | CONSENT TO BECOME A PARTY PLAINTIFF |
|        Plaintiffs, | |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, | |
|        Defendant. | |

Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), the undersigned hereby gives my consent in writing to become a party plaintiff against my employer, Las Vegas Metropolitan Police Department ("LVMPD"). I authorized the filing of a copy of this consent form with the Court. I further consent to join this and/or any subsequent or amended suit against the same or related defendant for wage and hour violations.

Dated this 15th day of February, 2022.

_____
Daniel Coyne

# EXHIBIT 2

**Consent to Sue for David Denton**

1  ANTHONY P. SGRO
   Nevada Bar No. 3811
2  KELLY B. STOUT
   Nevada Bar No. 12105
3  **SGRO & ROGER**
4  720 South Seventh Street, Third Floor
   Las Vegas, Nevada 89101
5  Telephone: (702) 384-9800
   Facsimile: (702) 665-4120
6  TSgro@sgroandroger.com
7  KStout@ sgroandroger.com

8  *Attorneys for Plaintiffs*

9                    **DISTRICT COURT**
                  **CLARK COUNTY, NEVADA**
10

11 Daniel Coyne, individually and on behalf of those   Case No.
   similarly situated; David Denton, individually
12 and on behalf of those similarly situated; and      Dept. No.
   Sean Bollig, individually and on behalf of those
13 similarly situated;                                 CONSENT TO BECOME A PARTY PLAINTIFF

14          Plaintiffs,

15 v.

16
   LAS VEGAS METROPOLITAN POLICE
17 DEPARTMENT,

18          Defendant.

19

20          Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), the undersigned hereby gives

21 my consent in writing to become a party plaintiff against my employer, Las Vegas Metropolitan

22 Police Department ("LVMPD").   I authorized the filing of a copy of this consent form with the

23 Court. I further consent to join this and/or any subsequent or amended suit against the same or

24 related defendant for wage and hour violations.

25          Dated this 15th day of February, 2022.

26

27

28                                                    _____
                                                      David Denton

# EXHIBIT 3

**Consent to Sue for Sean Bollig**

1   ANTHONY P. SGRO
    Nevada Bar No. 3811
2   KELLY B. STOUT
    Nevada Bar No. 12105
3   **SGRO & ROGER**
4   720 South Seventh Street, Third Floor
    Las Vegas, Nevada 89101
5   Telephone: (702) 384-9800
    Facsimile: (702) 665-4120
6   TSgro@sgroandroger.com
7   KStout@ sgroandroger.com

8   *Attorneys for Plaintiffs*

9                               DISTRICT COURT
                           CLARK COUNTY, NEVADA
10
11  Daniel Coyne, individually and on behalf of those     Case No.
    similarly situated; David Denton, individually
12  and on behalf of those similarly situated; and        Dept. No.
    Sean Bollig, individually and on behalf of those
13  similarly situated;                                   CONSENT TO BECOME A PARTY PLAINTIFF

14          Plaintiffs,

15  v.

16  LAS VEGAS METROPOLITAN POLICE
17  DEPARTMENT,

18          Defendant.

19

20          Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), the undersigned hereby gives

21  my consent in writing to become a party plaintiff against my employer, Las Vegas Metropolitan

22  Police Department ("LVMPD").   I authorized the filing of a copy of this consent form with the

23  Court.  I further consent to join this and/or any subsequent or amended suit against the same or

24  related defendant for wage and hour violations.

25          Dated this 15th day of February, 2022.

26

27                                                  _____

28                                                  Sean Bollig

# EXHIBIT 4

**Additional FLSA Class Members Prepared to Join Suit**

**Additional FLSA Class Members Prepared to Join Suit**

**The following individuals have already stated their desire and intent to join to the suit.**

Marc T. Bailey
Michael Bland
Daniel Blount
Sean Bollig
Manuel Anthony Botelho
Ryan P. Boyce
Joseph Bringhurst
Ryan Brown
Baron Bybee
Alfredo Calata
Eric Carlson
Daniel Cazares
Michael E. Childs Gussen
Gwenevere Conover
Steven Corry
Daniel P. Coyne
Cameron Cozzens
Curtis Davis
David Denton
Alan Dong
Brian Drake
Josue G. Esparza
Garrett Fitzgerald
Brian Fortner
Amanda Frey
Jaime Gallegos Jr.
Liovany Garcia
Victor Gardea
Manuel Gardea
James Godfrey
Robert Grabowski
Timothy T. Gross
Jeffrey A. Henry Jr.
Alfredo Jr. Hernandez
Gregory Hilton
Jonathan Houghton
David Hunkins
Allen B. Ibe
Joseph Iszkiewicz
Andre Jackson
Mark Jamora
Darin Jones
William Kearnes

Melissa Krohm
James K. Kurashige
Peyton Leavitt
Joeseph B. Legut
Travis Linder
Daphna Maman
Demetrio Medrano
Michael Mendez
Darko Milanovic
Joshua Millard
Padilla Mills
Anthony Montoya
Michael Mordini
Alexander Mortel
Robert Murphy
Christina Necas
Andy Nguyen
James H. Parker Jr.
Ryan Pedroso
Joshua Pepper
Miles Peshlakai
John Phillips
Kirsten Pico
Zachary Piekarski
Michael N. Purcaro
Stephen Riedy
Jeremy Richter
Steven Shad Rollo
Joed Andrew L. Ruth
Erik Saari
Ali I. Saleem
Noel Sanchez
Neil Rhemee Santiago
Ian Price Shannon
Kyle Smith
Eric Sokolowski
Juan Ruiz Suazo
Christopher Swallia
James Tam
Kristen Taylor
Blane J. Tripp
Chayton Tromba
Elvin-Ron Valle

Scott Vannostrand
Benjamin Vazquez
Jimmy Velasco
Kirt Vesperas
Ty Vesperas
Howard Wall
James J. Wanyonyi
Joshua West